IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES PIUNTI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| LAKE COUNTY SHERIFF'S DEPARTMENT, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# COMPLAINT

Comes now the plaintiff, James Piunti, by counsel, and for his Complaint against the defendant, states as follows:

I.  Preliminary Statement.

1. The plaintiff, James Piunti, alleges discrimination in the work place, by his former employer, the Lake County Sheriff's Department.

2. The challenged action violates the Americans with Disabilities Act of 1990, as amended, and the Americans with Disabilities Act Amendments Act of 2008, as amended, pursuant to 42 U.S.C. §12101, et seq.

II.  Jurisdiction.

3. This court has jurisdiction over the subject matter of this case, pursuant to 42 U.S.C. § 12117, 42 U.S.C. §2000 e-5, 28 U.S.C. § 1331. The plaintiff has filed a timely charge with the Equal Employment Opportunity Commission, which issued a "Right to Sue Letter."

III.    Parties.

4.     The plaintiff, James Piunti, is an adult male. He is a citizen of the United States and a resident of Lake County, Indiana.

5.     Lake County Sheriff's Department employs more than fifteen employees, and is an "employer" within the meaning of Section 101 of the ADA, 42 U.S.C. §12111(5)(a).

IV.    Factual Allegations.

6.     James Piunti is a person of disability, as he has congenital and profound deafness. When Piunti was hired by the defendant, the defendant was fully aware of Piunti's disabilities.

7.     On August 22, 2005, Piunti started employment with Lake County, in the Lake County Sheriff's Department. At all times relevant, Piunti's employment was at the direction and supervision of the Lake County Sheriff.

8.     From August 22, 2005 to January 30, 2006, Piunti worked in the defendant's Computer Services Department as a part-time employee.

9.     On January 30, 2006, Piunti was given a full-time position within the Computer Services Department.

10.    Piunti's job duties in the Computer Services Department included performing computer hardware and software repair.

11.    Piunti received over 300 hours of computer training related to his job duties in 2006.

12.    While working in the Computer Services Department, Piunti's disability was accommodated. He was issued a cellular phone with text capabilities and a computer with email access to communicate with co-workers and management.

13. Piunti was, at all times, able to perform the essential functions of his job in the Computer Services Department, with reasonable accommodation for his disability.

14. During this time, co-workers were aware that Piunti was deaf and were able to communicate with him. To communicate with patrol officers, Piunti wrote down questions and answers on paper. To communicate with other co-workers, including office staff, the jail, and the medical department, Piunti used text or e-mail.

15. During this time, Piunti received no discipline or negative work evaluations.

16. After John Buncich ("Sheriff Buncich") became the Lake County Sheriff in January 2011, Piunti was transferred back and forth between the Computer Services Department and the Bureau Identification Department four different times.

17. In or around January, 2011, Piunti's accommodated method of communicating with co-workers was removed. Specifically, Piunti's work-issued cellular phone with text capabilities was discontinued without notice. In addition, Piunti was informed that he was not to have or use a computer during work hours.

18. On June 30, 2011, Piunti was permanently transferred to the Bureau of Identification at the direction of Sheriff Buncich, and Piunti was assigned to work in the supply room.

19. Piunti's job duties at the Bureau of Identification included handing out supplies, printing envelopes, filing fingerprint cards, putting index cards in alphabetical order, and performing maintenance on the Duplo printing machine, which included minor repairs and replacement of ink and supplies. Piunti was also assigned the task of answering the telephone to take telephone orders for supplies within the Department. Piunti was, at all times, able to perform

3

the essential functions of his job in the Bureau of Identification, with reasonable accommodation for his disability.

20. Piunti received no training for his new assignment at the Bureau of Identification, and there were no attempts made by the defendant to accommodate for Piunti's disability.

21. In his new role, Piunti had trouble communicating with his co-workers, supervisors, and the public, making it difficult for him to perform his job duties.

22. Because co-workers were not informed of Piunti's disability, they continued to attempt to place supply orders by telephone. Piunti was unable to hear the telephone ring because of his disability.

23. Piunti's supervisor, Corporal Maria Garcia, informed him that she was receiving complaints because the telephone was not answered and that it was inconvenient for her to take the supply orders in addition to her other duties.

24. Garcia changed the procedure to require supply orders be made in person and written down on paper. Piunti was met with hostility from co-workers because they were then required to make their requests in person, instead of by telephone. Piunti spoke to Garcia about the hostility he was receiving from co-workers regarding the procedure change. Garcia informed Piunti that the new process of placing orders was not going to change.

25. On several occasions, Piunti attempted to contact Garcia for advice, and Garcia did not respond to him.

26. After Piunti requested access to a computer for e-mail communication within the department, Garcia informed him that Sheriff Buncich had instructed that Piunti was not to have or use a computer during work hours.

27. Without a cellular phone with texting capabilities, or a computer with e-mail access, Piunti's only method of communication with his co-workers was direct face-to-face contact.

28. On or around July 18, 2011, Piunti informed Officer Chris Salmon about problems he was having with the Duplo print machine, and told him that it may need to be repaired. Piunti provided Salmon with the repair company's name and phone number, but no one called the repairman and the machine was not repaired.

29. On or around March 11, 2013, Garcia told Piunti that he was responsible for printing envelopes with ink blots and smudges. Piunti was upset and attempted to explain that the Duplo print machine was not in good condition and needed a tune-up, but Garcia disagreed. In the past, Piunti told Garcia and other staff about this on-going problem and that it would be a good idea to order pre-printed envelopes.

30. On March 12, 2013, Piunti was summoned to a meeting with Sergeant Carl Porter, Deputy Commander Robert Arnold, and Chief Tom Downs. At the meeting, Piunti received a letter from Sheriff Buncich, informing him of his termination, effective March 12, 2013. The reason given for Piunti's termination was "repeated instances of inefficiency in the performance of duties." Piunti received no prior warnings or write-ups prior to his termination.

31. During the course of Piunti's employment with the Lake County Sheriff's Department, and at the time of his termination, Piunti satisfactorily performed the functions of his job.

32. On March 15, 2013, Piunti went to the Bureau of Identification to pick up his personnel files. In his files, Piunti discovered a letter of reprimand dated March 7, 2013. Piunti never received a copy of this letter, and had no knowledge of this letter prior to March 15, 2013.

33. On April 2, 2013, Sheriff Buncich made a statement regarding Piunti's disability, was printed in a Northwest Indiana newspaper, that Piunti's inability to hear or speak meant that he could not perform adequately in the Department, that the Department "made every accommodation [they] possibly could help him to fit in," and that it "is hard with a disability like that."

34. Piunti did not consent to have his confidential medical information disclosed in the newspaper article, including statements about his ability to perform his job duties.

35. On May 28, 2013, Piunti filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") for disability discrimination.

36. On July 1, 2014, the EEOC issued a Letter of Determination, finding that, "[T]he [Employer] had knowledge of [Plaintiff's] need for an accommodation. [Employer] failed to provide an accommodation, despite the fact that an accommodation would not have been an undue hardship. Evidence indicates that [Employer] believed [Plaintiff's] disability meant that he could not perform the essential functions of his position." The EEOC further found that "there is reasonable cause to believe that the [Employer] denied [Plaintiff] an accommodation and fired him because of his disability, in violation of the ADA." The EEOC further found that evidence indicated that the Employer "disclosed [Plaintiff's] disability to the public in violation of the ADA."

37. As a result of the employment practices by the Lake County Sheriff's Department, Piunti has been discriminated against based on his disability, in violation of the Americans with Disabilities Act (ADA), as amended by the Americans with Disabilities Amendments Act (ADAAA).

38. As a result of discrimination by the Lake County Sheriff's Department, Piunti has been adversely affected. Piunti lost his full-time employment with the defendant, and has incurred a loss of income and benefits. He has also suffered humiliation, embarrassment, emotional and mental distress.

V. Legal Claims.

Count One – Discrimination under the ADA and the ADAAA

39. Piunti hereby incorporates by reference paragraphs one (1) through thirty-eight (38) of his Complaint by reference.

40. Piunti was wrongfully terminated by the defendant, as the defendant has violated the Americans with Disabilities Act of 1990, as amended, and the Americans with Disabilities Act Amendments Act of 2008, as amended, pursuant to 42 U.S.C. §12101, et seq.

41. Lake County Sheriff's Department's acts and omissions in this matter discriminated against Piunti because of his disability, his record of disability, and/or being regarded as having a disability in violation of the ADA and the ADAAA.

42. The unlawful employment practices complained of were intentional.

43. The unlawful employment practices complained of were done with malice or with reckless indifference of the federally protected rights of James Piunti.

WHEREFORE, the plaintiff requests that the court:

A. Issue a declaratory judgment that the defendant's discrimination of the plaintiff violates the ADA, and the ADAAA;

B. Enter an injunction against the defendant from further discrimination against the plaintiff, and order that the defendant institute and carry out policies, practices and programs

which provide equal employment opportunities for the disabled, and which eradicate the effects of its past and present unlawful employment practices;

  C. Order the defendant to make whole James Piunti by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the defendant's unlawful employment practices, including, but not limited to reinstatement of Piunti to his employment, or in the alternative, an award of front pay;

  D. Award the plaintiff compensatory damages and punitive damages, available under the ADA and the ADAAA, in an amount to be proved at trial;

  E. Award the plaintiff costs and attorney's fees;

  F. Award the plaintiff all other just and equitable relief.

Count Two – Disclosure of Confidential Information to the Public
In Violation of the ADA and the ADAAA

  44. Piunti hereby incorporates by reference paragraphs one (1) through forty-three (43) of his Complaint by reference.

  45. Defendant obtained Piunti's medical information through employment-related medical examinations and inquiries.

  46. Defendant failed to treat this medical information as confidential when it disclosed it to the public.

  47. Piunti was injured by the disclosure when he was denied future employment with prospective employers, suffered emotional injury and was subject to the Defendant's continued illegal discrimination in employment.

WHEREFORE, the plaintiff requests that the court:

A.Issue a declaratory judgment that the defendant's discrimination of the plaintiff violates the ADA, and the ADAAA;

B.Enter an injunction against the defendant from further discrimination against the plaintiff, and order that the defendant institute and carry out policies, practices and programs which provide equal employment opportunities for the disabled, and which eradicate the effects of its past and present unlawful employment practices;

C.Award the plaintiff compensatory damages and punitive damages, available under the ADA and the ADAAA, in an amount to be proved at trial;

D.Award the plaintiff costs and attorney's fees;

E.Award the plaintiff all other just and equitable relief.

s/ Michael J. Rappa
_____
Michael J. Rappa, Attorney No. 17512-45
Law Office of Michael J. Rappa, P.C.

Attorney for the plaintiff, James Piunti

## **JURY DEMAND**

Comes now the plaintiff, James Piunti, by counsel, and demands trial by jury.

        Respectfully Submitted,

        s/ Michael J. Rappa
        _____
        Michael J. Rappa, Attorney No. 17512-45
        Law Office of Michael J. Rappa, P.C.
        233 East 84th Drive, Suite 203
        P.O. Box 10932
        Merrillville, IN  46411
        Tel.  (219) 595-3295
        Fax (219) 595-3289
        Email:  rappa.michael@gmail.com

        Attorney for the plaintiff, James Piunti